Micha Danzig (SBN 177923)
mdanzig@mintz.com
Andrew D. Skale (SBN 211096)
askale@mintz.com
Benjamin L. Wagner (SBN 243594)
blwagner@mintz.com
Justin S. Nahama (SBN 281087)
jsnahama@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO P.C.
3580 Carmel Mountain Road, Suite 300
San Diego, CA 92130
Telephone:  (858) 314-1500
Facsimile:  (858) 314-1501

Attorneys for Plaintiff
CROSSFIT, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MAXIMUM HUMAN PERFORMANCE, LLC, a Delaware LLC,<br><br>Defendant. | Case No.  **'12 CV 2348 BTM MDD**<br><br>**COMPLAINT FOR:**<br><br>**1) TRADEMARK INFRINGEMENT;**<br>**2) FEDERAL UNFAIR COMPETITION;**<br>**3) DILUTION OF FAMOUS MARK;**<br>**4) COMMON LAW UNFAIR COMPETITION**<br><br>**[JURY DEMANDED]** |

CrossFit, Inc. ("CrossFit" or "Plaintiff") brings this suit for trademark infringement, federal unfair competition, trademark dilution, and common law unfair competition against Maximum Human Performance, LLC ("MHP" or "Defendant") and alleges as follows:

**THE PARTIES**

1.     Plaintiff CROSSFIT, INC. ("CrossFit") is a Delaware corporation with its principal place of business at 1250 Connecticut Avenue, Suite 200, Washington D.C. 20036.  CrossFit has places of business throughout California, including a media headquarters in California.

2.     Upon information and belief, MHP is a Delaware LLC with its principal place of business at 21 Dwight Place, Fairfield, New Jersey 07004.

1

3.     Defendant's actions alleged herein were those of itself, its agents and/or licensees.

**JURISDICTION AND VENUE**

4.     This Court's jurisdiction rests upon 15 U.S.C. §§ 1121(a), 28 U.S.C. §§ 1338(a) & (b), and 28 U.S.C. § 1367(a).

5.     This Court has jurisdiction over the federal trademark infringement, dilution and false advertising claims pursuant to 15 U.S.C. § 1121(a) 28 U.S.C. § 1338(a).

6.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1338(b) and § 1367(a) as all claims herein form part of the same case or controversy.

7.     Personal jurisdiction exists over the Defendant because it conducts substantial business in California and therefore has sufficient contacts such that it would not offend traditional notions of fair play and substantial justice to subject Defendant to suit in this forum.  Defendant purposefully directed its harmful conduct alleged below at this forum, and purposefully availed itself of the benefits of California with respect to the claims alleged herein. A substantial part of the protected intellectual property in this action exists in this district

8.     Venue in this district is proper under 28 U.S.C. § 1391 and 28 U.S.C. §1400 because a substantial part of the events or omissions giving rise to the claim occurred in this district.

**FACTUAL ALLEGATIONS**

**CrossFit's Origin**

9.     CrossFit is the brand of a revolutionary fitness training regimen that has become the principal strength and conditioning program for many police academies and tactical operations teams, military special operations units, champion martial artists, and hundreds of professional and amateur athletes worldwide.

10.     With its emphasis on "functional movement", e.g., core to extremity movement patterns that mimic the tasks performed in all walks of life, and its unmatched effectiveness, CrossFit has also become the fitness and lifestyle choice for people of all ages and abilities.  This includes, without limit, children, pregnant women, service-members recovering from combat-related injuries, and senior citizens.

1    11.    As a former gymnast turned coach, Greg Glassman developed the CrossFit

2 methodology and trademark around 1991.  From that point, Mr. Glassman called his training

3 program CrossFit for more than 10 years, and launched the CrossFit.com website by 2001.

4                    **Federal Trademark Registrations for CrossFit**

5    12.    CrossFit's federal U.S. trademark registrations in the CrossFit mark include U.S.

6 Reg. Nos. 3,007,458; 3,826,111; 4,049,689 and 4,122,681, for use with its many products and

7 services (collectively, the "CrossFit Marks," attached hereto and incorporated herein as "Exhibit

8 A"), a mark which has been in use since at least as early as 1985. CrossFit also has pending federal

9 trademark applications for the CrossFit Marks (including Serial Nos. 77/719,836; 77/719,838;

10 77/719,842; 77/719,862; 85/629,318; 85/595,646 and 85/595,737, attached hereto and incorporated

11 herein as "Exhibit B.")

12    13.    The products and services covered by CrossFit's federal registrations include fitness

13 training, an entertainment series for television and the internet featuring fitness, nutrition, sports and

14 exercise, as well as fitness competitions, footwear, and clothing.

15    14.    Among CrossFit's applications for federal trademarks is an application for CrossFit

16 for nutritional energy bars, nutritional drinks, and nutritional supplements, filed on April 22, 2009

17 (Serial No. 77/719,862), an application which is still pending.  *See*, Exhibit B.

18                          **The CrossFit Methodology**

19    15.    The widely publicized CrossFit methodology, serving as the basis for its workouts, is

20 "constantly varied, high-intensity, functional movement."

21    16.    CrossFit workouts employ a variety of tasks including weightlifting, running,

22 rowing, swimming, biking, and gymnastics.

23    17.    CrossFit has developed and consistently utilized specific terminology for certain

24 movements found within CrossFit's programming, including "thrusters," "hand release push ups"

25 (raising one's hands at the bottom position of the pushup), and "toes to bar."

26    18.    Most CrossFit workouts are completed "for time," meaning the workout should be

27 completed as quickly as possible while maintaining proper mechanics.

28

19.     CrossFit's homepage, www.crossfit.com, releases a new workout each day, which is commonly referred to as the "workout of the day" or "WOD."

20.     While the CrossFit programming is "constantly varied," i.e., changing daily, there are "benchmark workouts" that reappear within the programming.

21.     The benchmark workouts allow CrossFit followers ("CrossFitters") to challenge themselves while providing empirical evidence to track progress.

22.     The benchmark workouts were named after females.  The first benchmark workouts were introduced to the CrossFit community no later than September 2003.  As an example, the benchmark workout "Diane," one of the original benchmark workouts, consists of completing the following movements and repetitions "for time": 21 repetitions of a 225 pound deadlift followed by 21 handstand pushups, then 15 repetitions of deadlifts and 15 repetitions of handstand pushups, and concludes with 9 repetitions of deadlifts and 9 repetitions of handstand pushups.

23.     Similar to the benchmark workouts named after females, CrossFit has benchmark workouts named after fallen service-members, first responders, and law-enforcement personnel.  For example, the benchmark workout "Murph," named after fallen Navy SEAL and Medal of Honor Recipient Michael P. Murphy, consists of a 1 mile run, 100 pushups, 200 sit-ups, 300 body-weight squats, and a final 1 mile-run, all while wearing a 20 pound vest or "body armor."  As with all benchmark workouts, Murph is completed "for time."

**CrossFit's Growth**

24.     Through its effective design, development, sales, and marketing activities, CrossFit's growth has been unparalleled in the fitness industry.

25.     On information and belief, CrossFit has more gyms, referred to as "affiliates," than Gold's Gym and 24 Hour Fitness, combined.

26.     The number of CrossFit affiliates grew to 50 by the end of 2005, 450 by mid-2008, and to over 3000 in 2011.  As of September 17, 2012, CrossFit has approximately 4,650 valid affiliates in over 73 countries.

27.     Since 2011, CrossFit has its own international competition aired on ESPN (the

1  CrossFit Games), a thriving international community of online followers, and a 10-year deal with

2  Reebok to be the title sponsor of the CrossFit Games and produce CrossFit apparel and footwear.

3     28.     CrossFit, Inc.'s business model relies largely on its licensees.  It licenses the CrossFit

4  brand to gyms known in the community as "affiliates."

5     29.     CrossFit provides a nationally standardized accreditation program (ANSI, the

6  American National Standards Institute) to persons who desire to become licensed CrossFit affiliates

7  or Level 1 Certificate holders.

8     30.     Persons who successfully complete CrossFit's accreditation program and meet other

9  requirements for affiliation are eligible to enter into annually renewable affiliate license agreements

10 which permit limited use of the CrossFit mark subject to specified conditions.

11    31.     Only persons who have completed CrossFit's accreditation process and entered into

12 valid affiliate license agreements are authorized to use CrossFit's mark.

13              **The CrossFit Games, Other CrossFit Services, and CrossFit Apparel/Footwear**

14    32.     The CrossFit Games have taken place annually since 2007, and are hosted in

15 California.  By 2011, the CrossFit Games welcomed over 26,000 competitors from 59 countries

16 competing to qualify.  In 2012, that number grew to nearly 70,000 from 73 countries.

17    33.     The CrossFit Games have grown to be nationally televised by ESPN (both through

18 live streaming on ESPN3 and televising a post-produced series of episodes (12 episodes in 2011 and

19 17 episodes in 2012; with replay throughout the year). The CrossFit Games are also streamed live

20 worldwide on CrossFit's website located at www.crossfitgames.com and tickets to attend the three-

21 day finals at the Home Depot Center in Los Angeles, CA now quickly sell out.  A recent replay of

22 the 2011 CrossFit Games enjoyed approximately 800,000 viewers.

23    34.     To keep the CrossFit community apprised of updates and news, CrossFit publishes

24 news, articles and videos daily through its website located at www.crossfit.com, the CrossFit

25 Journal, CrossFit and CrossFit Games Facebook pages-which currently have more than 474,000

26 "likes"- YouTube channel and its Twitter account.  The CrossFit Journal is a compilation of written

27 articles and video clips that cover everything from weightlifting and training tips to nutrition.

28

35.     CrossFit also offers several specialty seminars including CrossFit Kids, CrossFit Football, gymnastics, Olympic weightlifting, powerlifting, running, endurance, rowing, kettlebell training, striking, strongman, goal setting, defense and mobility.

36.     CrossFit is also heavily engaged in fundraising.  Recently, CrossFit conducted "CrossFit For Hope," raising over $1.5 million for Saint Jude's Children's Research Hospital. Likewise, raising money and awareness for breast cancer, the CrossFit community charity drive "Barbells for Boobs" raised $600,000 in 2011.

37.     CrossFit is widely publicized in mainstream media articles and is routinely featured in the most popular industry magazines.

38.     CrossFit also participates under its CrossFit mark in the major fitness industry functions, such as The Arnold Sports Festival and the LA Fitness Expo.

39.     Southern California, specifically San Diego County, is well known throughout the CrossFit community as a hotbed for CrossFit.  There are over 30 CrossFit affiliate gyms in the San Diego area.

40.     Since the inaugural CrossFit Games in 2007, Southern California has produced several of the most popular and successful athletes in the CrossFit community.

41.     Since its partnership with Reebok, revenues from the sale of CrossFit apparel and footwear have surged.

**Maximum Human Performance**

42.     Defendant MHP is a nutritional supplement company who, upon information and belief, is in the business of nutritional supplements for the bodybuilding and fitness community including 30 products in at least 10 product categories.

43.     Upon information and belief, MHP has an online store and phone order system, and also sells its products through retailers such as GNC, The Vitamin Shoppe, and a host of other retailers with retail stores both nationally, and in San Diego.

44.     In San Diego, local retailers- such as Fabulous Muscles and GNC - carry MHP products.

45.   MHP promotes its nutritional supplements through a number of methods, including magazine advertisements and articles.

46.   MHP also promotes its nutritional supplements through booths and tables at a number of fitness industry events, including The Arnold Sports Festival and the LA Fitness Expo.

### MHP's Unauthorized Use of the CrossFit Name:
### The "X-Fit" Nutritional Supplements

47.   MHP developed and launched a line of supplements geared toward athletes involved in what MHP referred to as "high intensity cross-training."

48.   MHP's "high intensity cross-training" was and continues to be marketed to mirror CrossFit's methodology of "constantly varied, functional movement at high intensity."

49.   MHP launched two nutritional supplements under the brand name "X-Fit": "X-Fit Trainer" and "X-Fit Power" (collectively "X-Fit Products").

50.   CrossFit is informed and believes, and based thereon alleges, that the names "X-Fit Trainer" and "X-Fit Power" are specifically targeted at CrossFit followers by suggesting the supplements enhance CrossFit workout performance and/or recovery.

51.   To launch and promote the "X-Fit Products," MHP created an X-Fit homepage at www.mhpX-Fit.com ("X-Fit homepage").

52.   The "X-Fit homepage" features a "Team X-Fit" which prominently advertises the team members' experience with and relationship to CrossFit, identifies the target market as those trying to face the physical challenges of "High Intensity Cross-Training," and contains dozens of gratuitous references to CrossFit.

53.   The MHP "Workouts" webpage on the X-Fit homepage has included a "CrossFit Workouts" portion with videos showing the "LATEST CROSSFIT WORKOUT" and "CROSSFIT WORKOUT ARCHIVES."

54.   MHP has also included a search bar on its X-Fit webpage titled "SEARCH CROSSFIT."

55.   MHP has hosted X-Fit booths at the same trade shows as CrossFit.

56.   At one trade show, the Arnold Sports Festival, MHP attempted to recruit CrossFit

athletes and CrossFit Games competitors from the CrossFit booths to join the X-Fit team.

57.     MHP has targeted its X-Fit Product in the same industry periodicals in which CrossFit is featured, including Muscle & Fitness, Men's Fitness and BOXLIFE.

58.     Many of MHP's X-Fit advertisements are adjacent to articles on CrossFit.

59.     In the August/September 2012 periodical BOXLIFE, a magazine geared toward CrossFit followers, MHP has a two-page X-Fit advertisement sandwiched between content otherwise dedicated exclusively to CrossFit information.

60.     In August 2012, there were nine instances of both X-Fit and CrossFit appearing on the same pages within MensFitness.com.

61.     When CrossFit learned of MHP's infringing activities, CrossFit contacted MHP personnel and engaged in informal settlement discussions.  The settlement discussion began in February 2012 and continued through July 2012.

### MHP's Unauthorized Use of the CrossFit Name:
### The "X-Fit Workout Series"

62.     MHP posts a series of CrossFit-inspired workout videos, referred to as the "X-Fit Workout Series" on YouTube, which to-date have tens of thousands of cumulative views.

63.     The MHP "X-Fit Workout Series" mimics the CrossFit method of providing a workout of the day/WOD.

64.     On information and belief, nearly all of the "X-Fit Workout Series" videos are filmed in a CrossFit affiliate gym.

65.     During the "X-Fit Workout Series" introduction video, posted on YouTube, Daniel "Boomsauce" Tyminski begins by introducing himself as a CrossFit Games competitor.

66.     The "X-Fit Workout Series" introduction video concludes by stating, "Dan Tyminski will give detailed instruction on the CrossFit exercises you must know as well as take you through 10 WODs and throwing down a Boomsauce challenge workout every month.  Mark this page and come back often to get the latest, most informative, and most inspirational CrossFit videos on the web. Brought to you by the only supplement designed for extreme training of any kind, X-Fit."

67.     The "X-Fit Workout Series" contains displays of the CrossFit logo, including a

8

CrossFit affiliate banner and an athlete wearing a "CF" t-shirt.

68.     The "X-Fit Workout Series" employs exercise names coined by CrossFit-such as "thrusters," "toes to bar," and "wall ball"- and includes the well-known, trademarked CrossFit phrase that begins all "for time" workouts: "3…2…1… Go!"

69.     CrossFit has a registered trademark for the phrase "3…2…1… Go!" in Reg. No. 4047236.

### MHP's Unauthorized Use of CrossFit Name: The "X-Fit Cup"

70.     From March 1, 2012, through August 31, 2012, MHP launched an online "X-Fit Cup Challenge."

71.     MHP branded the "X-Fit Cup Challenge" as "a chance for you to test your mettle against CrossFit Games Finalist Daniel 'Boomsauce' Tyminski and see if you have what it take to win the X-FIT Cup."

72.     On information and belief, the first "X-Fit Cup" workout was filmed in a CrossFit affiliate gym.

73.     The "X-Fit Cup" is modeled from the "CrossFit Open," the initial qualifier for athletes seeking to compete in the CrossFit Games.

74.     Beginning in 2010, CrossFit launched the "CrossFit Open," where it released five "surprise" weekly workouts allowing athletes from around the world to compete against each other.

75.     The "X-Fit Cup" format mimics the CrossFit Open format of releasing online "surprise" workouts on an incremental basis.

76.     The "X-Fit Cup" video utilized movements and phrases coined by CrossFit that were previously employed in CrossFit competitions, such as "hand-release pushups" and "toes to bar."

77.     Mr. Tyminski's explanations of the movement standards for the "X-Fit Cup" are almost or exactly identical to those required by CrossFit Staff in CrossFit competitions.

78.     In the "X-Fit Cup" videos, Mr. Tyminski is wearing the Reebok CrossFit shoes issued to all competitors at the 2012 CrossFit Games.

9

**MHP's Unauthorized Use of the CrossFit Name:**
**Marketing "X-Fit" in Connection with CrossFit Events**

79.    MHP attempts to promote itself at official CrossFit events.  For example, during the Regional Qualifiers for the 2012 CrossFit Games, MHP attempted to require at least one of its "X-Team" athletes, Mr. Tyminski, to wear an "X-Fit" t-shirt to the event, which was set to be extensively covered by CrossFit media for its websites, Facebook pages and YouTube channel.

80.    After Mr. Tyminski qualified for and competed in the 2012 CrossFit Games, the mhpx-fit.com home page displayed an advertisement congratulating him for acheiving "14[th] Place [at the] 2012 CROSSFIT GAMES."

81.    Mr. Tyminski also appears in an X-Fit workout video where he claims to coach followers through a new "X-Fit" workout.

82.    In the video, MHP advertises that Mr. Tyminski is filming at a CrossFit affiliate.

83.    In the video, Mr. Tyminski coaches online followers while wearing an "X-Fit" t-shirt.

84.    In the video, Mr. Tyminski uses the same repetition scheme and exercises as the CrossFit benchmark workout, "Diane." The benchmark workout Diane recently generated significant buzz in the CrossFit community because it was employed throughout the world as the first workout during the 2012 CrossFit Regional Qualifiers.

85.    Defendant's use of the CrossFit mark and logo on its website and in the "X-Fit" videos was done without authorization or permission from CrossFit.

86.    Defendant has used the CrossFit mark and name as well as the name "X-Fit" to drive consumers to its website to purchase its goods and services and participate in its workouts.

87.    As a result of Defendant's misuse of the CrossFit mark and name, on information and belief, Defendant has financially profited.

**Unauthorized Use of Plaintiff's Famous CrossFit Mark**

88.    CrossFit is the owner of the famous mark CrossFit, a federally registered trademark, Reg. No. 3007458, 3826111, 4053443, and 4122681

89.     By virtue of continuous use, the acquisition of substantial goodwill and the ubiquitous use of this mark, the above mark has become famous within the meaning of 15 U.S.C. § 1125(c).

90.     On information and belief, Defendant controls and operates an Internet homepage via the domain name **mhpx-fit.com**.

91.     On information and belief, this Internet website is owned by Defendant.

92.     On information and belief, Defendant owns, controls and/or operates a number of other for-profit websites marketing other MHP nutritional supplements and workout tips.

93.     Defendant has used the trademark X-Fit, and confusingly similar marks to attract customers and consumers to its website marketing the X-Fit Products.

94.     Defendant has used Plaintiff's mark or a confusingly similar variation thereof in public statements, on third-party websites, and in other mediums.

95.     On information and belief, Defendant has misused this mark for the purpose of increasing its revenues, its exposure, traffic to the MHP Websites, and/or opportunities for revenue in the future.

96.     Defendant's use of Plaintiff's CrossFit mark is unauthorized, and has caused confusion and a likelihood of confusion.

97.     Defendant's uses of Plaintiff's CrossFit mark is likely to confuse consumers into believing there is an affiliation, connection, sponsorship or other form of relationship between Defendant's products and services and Plaintiff which in fact does not exist.

98.     Defendant's uses of Plaintiff's CrossFit mark are also likely to divert attention and initial-interest from Plaintiff to Defendant, for the financial profit of Defendant, and to the detriment of Plaintiff and its goodwill.

99.     Plaintiff's famous mark is being substantially diluted by the above uses, and is suffering actual and likely dilution of the distinctive qualities of the mark.

11

# FIRST CAUSE OF ACTION

## TRADEMARK INFRINGEMENT

### (15 U.S.C. § 1114 *et seq.* and Common Law)

100. Plaintiff incorporates by reference all other paragraphs contained in this Complaint.

101. Plaintiff owns the CrossFit mark, registered on the principal register of the United States Patent and Trademark Office as Reg. Nos. 3007458, 3826111, 4053443, and 4122681, and applied for as Application Serial Nos. 77/719,836; 77/719,838; 77/719,842; 77/719,862; 85/629,318; 85/595,646 and 85/595,737.

102. Defendant has used the CrossFit mark or a confusingly similar variation of the mark in connection with the sale, offering for sale, distribution or advertising of goods and/or services.

103. Defendant's use of the infringing mark has caused significant confusion in the marketplace, is likely to cause both confusion and mistake, and is likely to deceive consumers; the marks used by Defendant are identical or substantially similar in sound, appearance and meaning to Plaintiff's trademark.

104. Such use was done willfully and with knowledge that such use would or was likely to cause confusion and deceive others.

105. As a direct and proximate result of Defendant's trademark infringement, Plaintiff has been damaged within the meaning of 15 U.S.C. § 1114 *et seq.*

106. Defendant's use constitutes a counterfeit, which was willfully used, and thus CrossFit is entitled to statutory damages of up to $2 million per counterfeit mark per type of goods or services sold, offered for sale, or distributed, under 15 U.S.C. § 1117.

107. As a direct and proximate result of Defendant's trademark infringement, Plaintiff has been damaged within the meaning of 15 U.S.C. § 1125 *et seq.*

108. Plaintiff has suffered damages in an amount to be established after proof at trial or in the statutory amount.

109. Plaintiff is further entitled to disgorge Defendant's profits for its willful sales and unjust enrichment.

110.    This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. §
1117(a) in that Defendant's acts were malicious, fraudulent, deliberate and willful, and taken in bad
faith, entitling Plaintiff to its attorney's fees and a trebling of its damages.

111.    Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by
Defendant.  Thus, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

### SECOND CAUSE OF ACTION

### FEDERAL UNFAIR COMPETITION

### (15 U.S.C. § 1125 *et seq.*)

112.    Plaintiff incorporates by reference all other paragraphs contained in this Complaint.

113.    Defendant has committed acts of unfair competition under 15 U.S.C. § 1125 *et seq.*,
including the practices and conduct referred to above.  Not only does the conduct alleged constitute
trademark infringement, but it also purposefully exploits the unauthorized use of the CrossFit
trademark, signature methodologies and programs to heighten the likelihood that consumers will be
confused and an inaccurate appearance of affiliation created.

114.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered
and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation
and goodwill.  As such, Plaintiff's remedy at law is not adequate to compensate for injuries inflicted
by Defendant.  Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive
relief.

115.    By reason of such wrongful acts, Plaintiff is and was, and will be in the future,
deprived of, among others, the profits and benefits of business relationships, agreements, and
transactions with various third parties and/or prospective business relationship.  Defendant has
wrongfully obtained profit and benefits instead of Plaintiff.  Plaintiff is entitled to compensatory
damages and disgorgement of Defendant's said profits, in an amount to be proven at trial.

116.    This case qualifies as an "exceptional case" as these actions were done with
malicious, intentionally and willfully, and in bad faith, thus entitling Plaintiff to its attorney's fees
and a trebling of its damages.

# THIRD CAUSE OF ACTION

## DILUTION OF FAMOUS MARK

### (15 U.S.C. § 1125(C) & Cal. B&P Code § 14247)

117.   Plaintiff incorporates by reference all other paragraphs contained in this Complaint.

118.   Plaintiff's CrossFit trademark is a famous mark within the meaning of both 15 U.S.C. § 1125(C) & Cal. B&P Code § 14247, including for those services listed in Exhibits A and B for Reg. Nos. 3007458, 3826111, 4053443, 4122681, and Serial Nos. 77/719,836; 77/719,838; 77/719,842; 77/719,862; 85/629,318; 85/595,646 and 85/595,737, and acquired such status prior to the time Defendant began its use, because prior to that time:

     a.   The mark had a high degree of inherent and acquired distinctiveness;

     b.   The mark had been used by Plaintiff with substantial exclusivity as a trademark for a long duration in connection with the goods and services indicated by Plaintiff in its registrations;

     c.   The advertising and publicity received by the mark has been very significant nationally;

     d.   The geographical trading area of the mark encompassed at least the entire United States, and the Internet;

     e.   There were many highly prominent channels Plaintiff used for the goods and services under the mark, and Defendant has since chosen to use the ubiquitously stationed mediums of the Internet and national press;

     f.   The mark was highly recognized in the United States, and was highly affiliated with Plaintiff, something Defendant intentionally capitalized on;

     g.   The CrossFit mark has been registered on the principal register for a sufficient length of time to qualify for incontestable status.

119.   Pursuant to 15 U.S.C. § 1125(c) and Cal. B&P Code §§ 14247 & 14250, Plaintiff is entitled to an injunction sufficient to protect its famous mark from further dilution.

14

120.   By reason of such wrongful acts, Plaintiff is and was, and will be in the future, deprived of, among others, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationship. Defendant has wrongfully obtained profit and benefits instead of Plaintiff. The harm caused has no adequate remedy at law, and Plaintiff is entitled to preliminary and permanent injunctive relief.

121.   The actions of Defendant in diluting Plaintiff's mark were done with the willful intent to trade on the recognition of Plaintiff's famous mark, and in bad faith, accordingly entitling Plaintiff to compensatory damages, "exceptional case" status, as well as attorney's fees and a trebling of damages, all in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

**STATUTORY (Cal. B&P 17200 *et seq.*) AND COMMON LAW UNFAIR COMPETITION**

122.   Plaintiff incorporates by reference all other paragraphs contained in this Complaint.

123.   Plaintiff has trademark rights throughout the entire United States and California to the mark CrossFit.

124.   Defendant has committed acts of unfair competition, including the practices and conduct referred to in this Complaint. These actions constitute unlawful, unfair or fraudulent business acts or practices, and/or unfair, deceptive, untrue or misleading business practices. The actions were done in connection with sales or advertising.

125.   As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered and continues to suffer substantial pecuniary losses and irreparable injury to its business reputation and goodwill. As such, Plaintiff's remedy at law is not adequate to compensate for injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to temporary, preliminary and permanent injunctive relief.

126.   By reason of such wrongful acts, Plaintiff is and was, and will be in the future, deprived of, among other damages, the profits and benefits of business relationships, agreements, and transactions with various third parties and/or prospective business relationship. Defendant has

15

wrongfully obtained profit and benefits instead of Plaintiff.  Plaintiff is entitled to compensatory damages and disgorgement of Defendant's said profits, in an amount to be proven at trial.

127.    Such acts, as alleged above, were done with malice, oppression and/or fraud, thus entitling Plaintiff to exemplary and punitive damages.

WHEREFORE, Plaintiff demands the following relief for each cause of action unless otherwise noted:

1.    A judgment in favor of Plaintiff and against Defendant on all counts;

2.    A preliminary and permanent injunction from trademark infringement and unfair business practices by Defendant, and dilution of a famous mark;

3.    Damages in an amount to be determined at trial;

4.    Defendant's unjust enrichment and/or disgorgement of Defendant's profits;

5.    Trebling of damages for willful infringement, unfair competition and dilution;

5.    Exemplary and punitive damages (except as to relief for Cal. B&P 17200 *et seq.*);

6.    Pre-judgment interest at the legally allowable rate on all amounts owed;

7.    Statutory damages of up to $2 million under 15 U.S.C. § 1117(c) for infringement of a registered mark;

8.    Costs and expenses;

9    Attorney's fees and other fees under, among others, 15 U.S.C. § 1117(a) *et seq.* as an exceptional case;

10.    Restitution;

11.    Such other and further relief as this Court may deem just and proper.

Dated: September 26, 2012                MINTZ LEVIN COHN FERRIS GLOVSKY AND
                                         POPEO PC

                                   By ___/s/Ben L. Wagner, Esq._____
                                         Micha Danzig
                                         Andrew D. Skale
                                         Benjamin L. Wagner
                                         Justin S. Nahama
                                         Attorneys for Plaintiff
                                         CROSSFIT, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial as to all issues that are so triable.

Dated:  September 26, 2012                    MINTZ LEVIN COHN FERRIS GLOVSKY AND
                                             POPEO PC


                                             By     /s/Ben L. Wagner, Esq.
                                                    Micha Danzig
                                                    Andrew D. Skale
                                                    Benjamin L. Wagner
                                                    Justin S. Nahama

                                                    Attorneys for Plaintiff
                                                    CROSSFIT, INC.

6771584