# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CROSSFIT, INC., a Delaware Corporation,<br><br>                                    Plaintiff,<br><br>        v.<br><br>MAXIMUM HUMAN PERFORMANCE, LLC, a Delaware LLC,<br><br>                                    Defendant. | Case No. 12cv2348-BTM-MDD<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION** |

Plaintiff CrossFit, Inc. ("CrossFit") seeks a preliminary injunction requiring Defendant Maximum Human Performance, LLC ("MHP") to cease and remove its "X-Fit Workout Series" fitness videos and any other such videos available on the Internet that state or imply an affiliation with CrossFit, and to remove any use of "X-Fit" from its website or social media relating to exercise instruction.  For the reasons discussed below, CrossFit's motion for a preliminary injunction (ECF No. 5) is **GRANTED**, and its ex parte motion for leave to file a supplemental declaration in support of its motion for a preliminary injunction (ECF No. 53) is **DENIED** as moot.

//

//

//

12cv2348 BTM(MDD)

## I. <u>BACKGROUND FACTS</u>

CrossFit is a popular fitness program, well-known for its intense workout regimen and the corresponding intensity of its members.  MHP is a nutritional supplement company geared towards the sports and nutrition industry.  In 2011, MHP developed a line of "X-Fit" nutritional products.  According to MHP, the mark "X-Fit" is meant as an abbreviation for "Extreme Fitness Intensity Training."

CrossFit owns a variety of federal trademarks for "CrossFit," including for fitness training, fitness equipment, computer software related to tracking exercise, entertainment services (e.g., videos and podcasts), and clothing and footwear.  MHP owns a trademark for "X-FIT" and variations thereof solely for use related to "[d]ietary and nutritional supplements."

CrossFit commenced this action on September 26, 2012, and filed its motion for a preliminary injunction on September 27, 2012.  The motion was taken under submission by the Court on November 9, 2011.

## II. <u>STANDARD</u>

A plaintiff seeking a preliminary injunction or temporary restraining order must establish that (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest.  <u>Winter v. Natural Resources Defense Council</u>, 555 U.S. 7, 129 S. Ct. 365, 374 (2008).

The Ninth Circuit has held that the "sliding scale" approach to preliminary injunctions survives <u>Winter</u> when applied as part of the four-element <u>Winter</u> test.  <u>Alliance for the Wild Rockies v. Cottrell</u>, 632 F.3d 1127, 1131 (9th Cir. 2011).  In other words, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." <u>Id.</u> at 1135.

## III. <u>DISCUSSION</u>

12cv2348 BTM(MDD)

The Court finds that CrossFit is entitled to a preliminary injunction.  As discussed below, CrossFit have established that it is likely to succeed on the merits, it is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tip in its favor, and an injunction is in the public interest.

A.  Merits of Plaintiff's Legal Claims

Based on the evidence before the Court, it appears that CrossFit is likely to succeed on the merits of its legal claims.  CrossFit has alleged causes of action for trademark infringement, unfair competition, and trademark dilution.

To prevail on a claim of trademark infringement or unfair competition under the Lanham Act, the "ultimate test" is "whether the public is likely to be deceived or confused by the similarity of the marks." Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175 (9th Cir. 1988) (quoting New West Corp. v. NYM Co. of California, 595 F.2d 1194, 1201 (9th Cir. 1979)).

In the Ninth Circuit, courts use an eight-factor test to analyze the likelihood of confusion.  Dr. Seuss Ent., L.P. v Penguin Books USA, Inc., 109 F.3d 1394, 1404 (9th Cir. 1997).  The eight factors are as follows: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of good and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. AMF Inc. v. Sleekcraft Boats, 599 F.2d 342, 348-49 (9th Cir. 1979).  "The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them." Surfvivor Media, Inc. v. Survivor Productions., 406 F.3d 625, 631 (9th Cir. 2005).  Moreover, these factors are not exhaustive, and it may even be "possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1054 (9th Cir. 1999).

The Court declines to make any finding with regard to MHP's intent in creating the "X-

Fit" mark at this time, since the parties offer conflicting accounts.  Nonetheless, the Court finds that CrossFit has still offered sufficient evidence to indicate that it is likely to succeed on these claims.  While the marks are visually different, the Court finds unpersuasive MHP's argument that consumers are more likely to perceive the "X" in "X-Fit" as a short form for "Extreme" rather than "Cross."  CrossFit has offered a plethora of evidence indicating that "X" is commonly used and understood as a shorthand form of "Cross" by the general public. See Pl.'s Mot. Prelim. Inj., Exs. 10-15 (ECF 5-3 at 89-112).  While MHP argues that "X" is commonly used to mean "Extreme" in the sports and nutrition industry, many of the examples it relies on do not use "X" but rather "Xtreme" or some similar variation.  See Def. Opp. at 3 n.1.

Moreover, both marks are clearly geared towards the same audience, namely fitness enthusiasts, and MHP does not contest that it offers high intensity cross-training ("HICT") workout videos on its website similar to CrossFit's as a means of promoting its supplements. Indeed, CrossFit has offered evidence to show that MHP uses people affiliated with CrossFit to promote its X-Fit videos and prominently displays their affiliation with CrossFit on MHP's website.  See Pl.'s Mot. Prelim. Inj., Decl. of Dale Saran ("Saran Decl.") ¶ 18 (ECF No. 5-4); id. Ex. 5 (ECF No. 5-5).  Finally, CrossFit has offered evidence of consumer confusion.  See, e.g., id. Ex. 14 (ECF No. 5-5, 72-73).  Therefore, the Court finds that CrossFit is likely to succeed on its claims for trademark infringement and unfair competition.

As to CrossFit's cause of action for trademark dilution, "[a] plaintiff seeking relief under federal anti-dilution law must show that its mark is famous and distinctive, that defendant began using its mark in commerce after plaintiff's mark became famous and distinctive, and that defendant's mark is likely to dilute plaintiff's mark." Visa Int'l Serv. Ass'n v. JSL Corp., 610 F.3d 1088, 1089-90 (9th Cir. 2010).  The analysis for the state claim is the same as for the federal claim.  See Levi Strauss & Co. v. Abercrombie & Fitch Trading Co., 633 F.3d 1158, 1167 (9th Cir. 2011); id. at 1167 n. 6.

For the purposes of the preliminary injunction, CrossFit has offered sufficient evidence to indicate that it owns a famous mark, including that it currently licenses over 4,600 affiliate

gyms and hosts an annual international workout competition televised nationally by ESPN. See Saran Decl. ¶¶14-15.

To analyze the likelihood of dilution, the Court may consider all relevant factors, including:

(i) The degree of similarity between the mark or trade name and the famous mark.

(ii) The degree of inherent or acquired distinctiveness of the famous mark.

(iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.

(iv) The degree of recognition of the famous mark.

(v) Whether the user of the mark or trade name intended to create an association with the famous mark.

(vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. § 1125(c)(2)(B).

The Court has already found the marks to be similar.  MHP argues that CrossFit does not have a strong mark and failed to enforce its trademark rights, offering Google search results for "Xfit" and "X-Fit" as evidence that there are many other third parties either diluting the CrossFit name or preventing it from being distinctive in the first instance.  See Def. Opp. Mot. Prelim. Inj., Exs. 32-33 (ECF No. 23-1).  However, the Court notes that this very evidence demonstrates that CrossFit's mark is distinctive.  For instance, the first hit for "X-Fit" is CrossFit's homepage.  Ex. 33 (ECF No. 23-1 at 13).  Similarly, one of the search results for "Xfit" is from Urban Dictionary, defining "xfit" as an "abrieviation [sic] for Crossfit." Ex. 32 (ECF No. 23-1 at 6).  One search result for "XFit" is for a gym in Sunnyvale specializing in "Crossfit like" training (ECF No. 23-1 at 2). And so forth.

The overall impression is that CrossFit has a strong trademark.  Indeed, the fact that MHP uses CrossFit members as sponsors or participants in its workout videos to bolster the promotion of its X-Fit nutritional supplements speaks volumes, regardless of whether such use also constitutes infringement or dilution.  In conjunction with the similarity of the marks, the Court finds that CrossFit is likely to succeed on its claim for trademark dilution.

B. <u>Other Preliminary Injunction Factors</u>

Plaintiff has shown that it is likely to suffer irreparable harm in the absence of injunctive relief.  In trademark cases, irreparable harm may occur where the trademark owner suffers a loss of trade, goodwill, and/or control of a business' reputation.  <u>See</u> <u>CytoSport, Inc. v. Vital Pharmaceuticals, Inc.</u>, 617 F. Supp. 2d 1051, 1080 (E.D. Cal. 2009). As the court in <u>CytoSport</u> observed, "Trademarks serve as the identity of their owners and in them resides the reputation and goodwill of their owners.  Thus, if another person infringes the marks, that person borrows the owner's reputation, whose quality no longer lies within the owner's control."  Here, where the Court has already determined that CrossFit is likely to succeed on its claims for trademark infringement and dilution, it finds that CrossFit has also shown by extension that it is likely to suffer irreparable harm in the form of loss of control of its reputation and potential loss of goodwill.

The balance of hardships tips in favor of CrossFit.  As long as MHP is operating in the same domain as CrossFit, namely HICT fitness instruction, and doing so under a similar mark, CrossFit is unable to exercise adequate control over its reputation and goodwill.

The public also has an interest in protecting trademarks generally.  <u>See</u> <u>Brookfield</u>, 174 F.3d at 1066.  "Trademarks protect the public from confusion by accurately indicating the source of a product. They preserve a producer's good will in order that the purchasing public may not be enticed into buying A's product when it wants B's product."  <u>State of Idaho</u> <u>Potato Comm'n v. G & T Terminal Packaging, Inc.</u>, 425 F.3d 708, 715 (9th Cir. 2005) (internal quotations omitted).  Although MHP does not require the public to pay to watch its fitness videos, the danger lies in the potential confusion as to whether its X-Fit brand is affiliated with or identical to CrossFit.

Therefore, the Court finds that CrossFit has satisfied the remaining factors necessary for a preliminary injunction.

//

//

//

6

### III. <u>CONCLUSION</u>

For the reasons discussed above, CrossFit's motion for preliminary injunction (ECF No. 5) is **GRANTED**, and its ex parte motion for leave to file a supplemental declaration in support of its motion for a preliminary injunction (ECF No. 53) is **DENIED** as moot.

It is hereby **ORDERED** that, pending a further order of the Court:

(1) MHP must remove any use of "X-Fit" or "XFit" in connection with exercise instruction from its website or social media, and remove all use of its instructional video series–the "X-Fit Workout Series"–and any other videos currently posted on YouTube or other internet media which use the term "X-Fit" or "XFit" in any form; and

(2) MHP and any of its officers, agents, servants, employees, and those acting in active concert or participation with them who receive actual notice of this Order are prohibited from using "X-Fit" or "XFit" for purposes of exercise instruction, and from using any other exercise instruction or exercise instruction videos (in any medium) which state or imply an authorization by CrossFit.

The preliminary injunction shall be effective on the filing of this Order.  The Court will require a bond to be subsequently posted.  The parties shall confer on the amount of the bond and submit a proposed order setting the amount of the bond or, in lieu thereof, argument limited to five pages as to the amount of the bond on or before **April 26, 2013**.

**IT IS SO ORDERED.**

DATED:  April 12, 2013
6:10 P.M.
San Diego, CA

BARRY TED MOSKOWITZ, Chief Judge
United States District Court

7